**Luigi BARILLARO, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. CV 01–0301(RJD).**

United States District Court, E.D. New York.

Aug. 20, 2002.

David Kuznicki, New York City, for plaintiff.

Elliot M. Schachner, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, for defendant.

## *MEMORANDUM OF DECISION*

DEARIE, District Judge.

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") that he was not disabled from March 11, 1994 through August 26, 1998, and therefore is not entitled to disability benefits under the Social Security Act (the "Act"), 42 U.S.C. § 301 *et seq.* Defendant seeks remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) in order to give the Commissioner an opportunity to more fully develop the record and consider additional evidence. Plaintiff cross-moves for judgment on the pleadings, arguing that the record adequately establishes that plaintiff was disabled, and asks this Court to reverse the decision of the administrative law judge and remand the case for calculation of benefits. Because the Court finds that the administrative law judge's conclusion that plaintiff could perform sedentary work is not supported by substantial evidence, the decision of the administrative law judge is reversed and the case is remanded to the Commissioner for calculation of benefits.

## BACKGROUND

### A. Procedural History

This case has a rather unusual history. Plaintiff, Luigi Barillaro, filed his first application for disability benefits on March 25, 1994, alleging that he had been disabled since March 10, 1994 due to a number of ailments including heart problems, diabetes, depression, and associated conditions. The Commissioner initially denied plaintiff's application on September 14, 1994, and then again on reconsideration on January 13, 1995. Barillaro requested a

hearing before an administrative law judge ("ALJ"), which took place on December 5, 1995 before Administrative Law Judge Martin Kahn. ALJ Kahn found that plaintiff was not disabled for the period from March 10, 1994, the date Barillaro claimed disability, through March 29, 1996, the date he issued his decision. After the Appeals Council denied review of the decision on November 19, 1997, Barillaro filed his first complaint in this Court (97 CV 7604) seeking review of the Commissioner's 1997 final decision. By memorandum and order dated September 2, 1999, this Court remanded the case to the Commissioner for reconsideration after expressing doubt that the Commissioner had properly considered the medical opinions of Barillaro's treating physician, Dr. Riegel.

Soon after filing his complaint in federal court, Barillaro filed his second application for benefits on December 17, 1997, alleging disability since March 11, 1994. This application was denied initially and on reconsideration. Plaintiff requested a hearing, which took place on June 3, 1999 before ALJ Marilyn Hoppenfeld. ALJ Hoppenfeld, unaware of plaintiff's previous application for benefits, considered the case de novo. In a decision issued on March 24, 2000, ALJ Hoppenfeld found that Barillaro was not disabled from March 11, 1994 through August 26, 1998, but that he was disabled as of August 27, 1998, the date he turned fifty years old. The Appeals Council denied plaintiff's request for a review of the decision on November 20, 2000. Barillaro then filed the instant complaint (01 CV 0301), his second in this Court, challenging the portion of the Commissioner's 2000 final decision which found him not to be disabled from March 11, 1994 through August 26, 1998.

B.  *1999 Administrative Hearing Testimony*

At the second hearing, ALJ Hoppenfeld heard testimony from Barillaro, medical expert Dr. Harold Schecter and vocational expert Andrew Pasternack. Barillaro discussed his prior work experience as a press machine operator and a carpenter/construction worker. Tr. at 230–34. Plaintiff also explained his medical history after the heart attack that occurred in March 1994, which he claims precipitated his disability. Barillaro mentioned that he had received several angioplasties to relieve blockages in his veins. Tr. at 234–35. Barillaro also testified that he suffered from diabetes, and stated that he was once hospitalized for having a blood sugar count of 550. Tr. at 236–37. Barillaro explained that he had great difficulty walking for extended periods of time, stating that he could only walk one city block before experiencing shortness of breath and a "stabbing pain" in his chest and back that would last for twenty minutes or more. Tr. at 240–41. Barillaro also testified that he could only stand for ten minutes at a time, and sit for fifteen minutes. Tr. at 243. He further stated that he no longer drives or leaves the house, except to attend Sunday Mass or to make an occasional visit to his son's pizzeria to eat with his wife. Tr. at 246–47, 249.

Barillaro also testified that he had very poor eyesight making it difficult for him to read. He had laser surgery to improve this condition, but he maintained that it only temporarily improved his sight. Tr. at 248. Finally, throughout his testimony, plaintiff mentioned several drugs he was taking, including Insulin, Glucotrol and Glucophage for his diabetes, Nitrostat for his chest pains, and Prozac and Ambien for his depression. Tr. at 236, 241–42, 244.

The medical expert, Dr. Harold Schecter, then testified that Barillaro had "a history of severe coronary artery disease." Tr. at 251. Dr. Schecter observed that one of Barillaro's angiograms conducted in April 1996 revealed a 70% blockage in the

right coronary artery. The catherization performed at the same time showed an injection fraction of 55%, within normal limits. Tr. at 251–52. Based on this evidence, Dr. Schecter stated that Barillaro met the criteria of § 4.04C (specifically § 4.04C(1)(b)) of Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations ("CFR" or the "regulations")[1]—a finding that would automatically qualify plaintiff as disabled. Tr. at 253, 255, 257. Dr. Schecter stated that he was basing his conclusions on the results from the April 1996 angiogram, and that he did not have the results of an angioplasty conducted in February 1998 before him. Tr. at 251–52, 256–57. Dr. Schecter also considered the stress tests that were conducted after the 1996 angiogram, and which revealed no ischemia.[2] Nevertheless, those tests did not change his opinion because Barillaro was notable to achieve maximal heart rate during the tests, rendering them invalid. Moreover, Dr. Schecter stated that angiograms are more complete diagnostic tools than stress tests. Tr. at 254–55. Dr. Schecter further testified that plaintiff's coronary artery disease would prevent him from standing and walking for two hours in an eight-hour work day, but that there was nothing in the record to suggest that Barillaro could not sit for six hours or lift ten pounds on occasion. Tr. at 256.

Finally, the vocational expert, Andrew Pasternack, testified that plaintiff's prior work experience as a carpenter was skilled labor at the level of SVP 7, and that based on his present medical condition, Barillaro did not possess the residual functional capacity to perform his past work. Tr. at 261–62. Pasternack further opined that there were a few sedentary jobs which plaintiff could do, including a jewelry as-

sembler, a hand packer, and possibly a surveillance monitor. All of these were low semiskilled jobs at level SVP 2 or 3. Tr. at 263–65. When asked if someone with plaintiff's poor eyesight could perform these jobs, Pasternack further restricted the options to just hand packer. Tr. at 265–66.

### C. ALJ Hoppenfeld's Decision

Following the Social Security Administration's ("SSA") five-step procedure for evaluating disability claims, see 20 C.F.R. § 404.1520 (2001), ALJ Hoppenfeld found that Barillaro was not engaged in substantial gainful work activity, that his impairment qualified as "severe" according to the code, but that his condition was not severe enough to be listed in Appendix 1 of the regulations. ALJ Hoppenfeld further concluded that Barillaro did not possess the residual functional capacity needed to continue in his past work, but that for the period from March 11, 1994 through August 26, 1998, he retained the ability to perform certain types of sedentary work. Accordingly, ALJ Hoppenfeld denied him benefits for this period. For the period following plaintiff's fiftieth birthday on August 27, 1998, ALJ Hoppenfeld concluded that Barillaro could not adjust to other work and was therefore disabled and entitled to benefits. Tr. at 203–04.

In her decision, ALJ Hoppenfeld reviewed the testimony of the medical expert, Dr. Schecter. She stated merely that Dr. Schecter had considered whether plaintiff met the requirements of § 4.04C of Appendix 1 of the CFR, but did not indicate whether he had rendered an opinion on that issue. ALJ Hoppenfeld simply pointed out that Dr. Schecter lacked the

---

**1.** 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04C

**2.** Ischemia/myocardial infarction—"Ischemic myocardial necrosis usually resulting from

abrupt reduction in coronary blood flow to a segment of myocardium." *The Merck Manual* 1668 (17th ed.1999).

results from the most recent angioplasty and could not rely on the February 1998 stress test report because Barillaro had not achieved the maximal heart rate. Tr. at 206. ALJ Hoppenfeld further stated that Dr. Schecter had testified that plaintiff "could stand and walk two hours in an eight hour day; sit for six hours and lift ten pounds occasionally" and that he could perform "sedentary work activity." Tr. at 206. ALJ Hoppenfeld then cited Andrew Pasternack's testimony that someone with Barillaro's medical condition and poor eyesight, at least prior to his fiftieth birthday, could still perform the job of hand packer. Tr. at 207.

ALJ Hoppenfeld then reviewed the medical evidence in the case, which consisted of various reports from the following doctors: Dr. Ronnie Hershman, the cardiologist who performed plaintiff's angioplasties; Dr. Norman Riegel, plaintiff's primary treating physician; Dr. Jonathan Klahr, a rheumatologist who treated plaintiff for his back pain and left thigh pain; Dr. Irene Zide, a diabetes specialist who completed a residual functional capacity questionnaire concerning plaintiff; Dr. Brian Collet, an ophthalmologist who treated plaintiff for his eye problems and performed several laser procedures to improve his diabetic macular edema; Dr. Mannuccio Mannucci, plaintiff's treating psychiatrist; Dr. Frank Titone, a consultative ophthalmologist who examined plaintiff on March 18, 1998; Dr. Michael Polak, a consultative physician who examined plaintiff on March 27, 1998; and Dr. Azariah Eshkenazi, a consultative psychiatrist who examined plaintiff on March 25, 1998. Tr. at 208–10.

ALJ Hoppenfeld concluded that the reports from Dr. Klahr, Dr. Zide and Dr. Collet "fail[ed] to support a conclusion that the claimant is unable to perform any sustained work activity" and that their findings were "consistent with an exertional capacity for sedentary work." Tr. at 211. She specifically mentioned that Dr. Klahr found that plaintiff's back pain was only "mild," that Dr. Zide's findings were "essentially normal," and that Dr. Collet was able to improve plaintiff's vision to 20/25 with the laser surgery. *Id.* Furthermore, ALJ Hoppenfeld found that the report of Dr. Polak corroborated this assessment.

ALJ Hoppenfeld did concede that Dr. Riegel considered Barillaro totally disabled due to the fact that he could not lift anything and could not sit, stand and walk for more than two hours. However, she found that Dr. Riegel's conclusions were not supported by "detailed objective evidence," citing, *inter alia*, the stress tests, which found no evidence of ischemia. Tr. at 211. ALJ Hoppenfeld also recognized that Dr. Schecter had evaluated plaintiff with "severe coronary artery disease," but that the angioplasties had significantly reduced the blockages. Tr. at 211.

ALJ Hoppenfeld concluded that Barillaro could not perform his former work, which required heavy lifting and prolonged periods on his feet. She then looked to the Medical–Vocational Guidelines in Appendix 2 of the CFR to determine whether plaintiff could perform other work. For the period from March 11, 1994 to August 26, 1998, ALJ Hoppenfeld applied Rule 201.19, which is for individuals aged 45–49, with limited education or less, having skilled or semiskilled previous work experience where the skills are not transferable. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.19 (2001). She further stated that if plaintiff were capable of performing a full range of sedentary jobs, Rule 201.19 would preclude a finding of disability. *See id.* ALJ Hoppenfeld admitted that plaintiff could not perform a full range of sedentary jobs, but that Pasternack had indicated that there were several jobs which he could perform. She

therefore concluded that plaintiff was not disabled under Rule 201.19. Tr. at 212–13. For the period after Barillaro turned fifty, ALJ Hoppenfeld applied Rule 201.10, which has the same criteria as Rule 201.19 except it is for individuals "closely approaching advanced age." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.10 (2001). Following this rule, she found plaintiff to be disabled. Tr. at 213.

### D. *The Motions*

Defendant seeks to have this case remanded to further develop the record. Defendant argues that because ALJ Hoppenfeld was unaware of plaintiff's previous application for benefits, she did not possess some of the evidence contained in that prior application. Specifically, defendant mentions that the record lacked several pieces of evidence from Dr. Riegel, including a note dated July 27, 1994 (Tr. at 119); a report to the New York State Department of Social Services ("DSS") dated April 1994 (Tr. at 120–24); an electrocardiogram report dated March 23, 1994 (Tr. at 127); a residual functional capacity assessment dated January 20, 1995 (Tr. 176–77); and a note dated October 23, 1995 (Tr. at 175). Furthermore, the ALJ did not possess the discharge report from St. Francis Hospital concerning plaintiff's March 1994 angioplasty (Tr. at 134–49), a note dated August 4, 1994 and a report to the DSS dated August 16, 1994, both from Dr. Collet (Tr. at 150–54, 161). Finally, the record before ALJ Hoppenfeld lacked the results from a thallium myocardial perfusion imaging test performed on April 14, 1994 (Tr. at 128, 163–69), and the results of a chest x-ray and chest CT scan conducted on December 3, 1993 (Tr. at 132–33). Because of these omissions, defendant asserts that remand is warranted for the Commissioner to consider this evidence.

Plaintiff cross-moves for judgment of the pleadings on three separate grounds. First, plaintiff contends that the Commissioner erred as a matter of law in finding that he did not meet the criteria of § 4.04C, requiring a finding of disability. Second, plaintiff maintains that the Commissioner's finding that he could perform sedentary work is not supported by substantial evidence, and indeed, contradicted by the great weight of the evidence in the record. Finally, plaintiff claims that even if he could perform sedentary work, the Commissioner did not sustain her burden of establishing that he could perform other jobs in the national economy. For these reasons, plaintiff argues that the decision of the Commissioner should be vacated and the case remanded for calculation of benefits.

## DISCUSSION

In reviewing the decision of an ALJ, it is not the province of the Court "to determine de novo whether [plaintiff] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996)). However, the Court may reverse the decision of an ALJ if "it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal*, 134 F.3d at 501 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted)).

To qualify as "disabled" under the Act, Barillaro must show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

impairment must be of "such severity that [plaintiff] is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The CFR outlines a five-factored test that administrative law judges are to follow when evaluating a disability claim:

> First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal,* 134 F.3d at 501 (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.

In the instant case, ALJ Hoppenfeld followed the five-part test, finding that Barillaro was not gainfully employed, that his impairment was severe, but that it was not an impairment listed in Appendix 1 of the regulations. Appendix 1 contains "[a] list of certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *De-Chirico v. Callahan,* 134 F.3d 1177, 1180 (2d Cir.1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (listing of per se impairments). Plaintiff contends that ALJ Hoppenfeld erroneously determined that he did not meet the requirements of § 4.04C of Appendix 1.

Section 4.04C outlines the following impairment:

> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence revealing:
>    a. 50 percent or more narrowing of a nonbypassed left main artery; or
>    b. 70 percent or more narrowing of another nonbypassed coronary artery; or
>    c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>    d. 50 percent or more narrowing of at least 2 nonbypassed coronary arteries; or
>    e. Total obstruction of a bypass graft vessel; and
>
> 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04C. Plaintiff points out that in his testimony at the administrative hearing, Dr. Schecter noted that the April 1996 angiogram revealed "a 70% blockage of the right coronary artery" satisfying § 4.04C(1)(b), Tr. at 251–54, and that plaintiff exhibited the symptoms found in

§ 4.04C(2). Tr. at 251, 255. Moreover, Dr. Schecter specifically testified that based on the record before him, Barillaro "[did] meet the criteria [of § 4.04C]." Tr. at 257. Despite this testimony, ALJ Hoppenfeld stated in her decision that the "medical expert testified at the hearing that the claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations." Tr. at 204.

■ Plaintiff argues that ALJ Hoppenfeld's characterization of Dr. Schecter's testimony is clearly erroneous and that there is no "substantial evidence" in the record to substantiate her finding that plaintiff did not meet the requirements of § 4.04C. Having reviewed Dr. Schecter's testimony it is clear to the Court that he did, indeed, testify that Barillaro qualified for benefits under § 4.04C. *See* Tr. at 257. This testimony is especially compelling given that it came from a physician who was retained by the government, rather than by the plaintiff, to offer an assessment of the medical record in this case. Moreover, there is no medical testimony or "overwhelmingly compelling" non-medical evidence in the record to rebut his testimony. *Cf. Rivera v. Sullivan*, 923 F.2d 964, 968–70 (2d Cir.1991) (the absence of conflicting medical testimony or "overwhelmingly compelling" non-medical evidence contradicting a treating physician's opinion indicated that the ALJ's denial of benefits was not supported by "substantial evidence"). It is possible, that ALJ Hoppenfeld was concerned that Dr. Schecter did not have the results of the more recent February 1998 angioplasty to factor into his evaluation. Nevertheless, that does not provide license to ignore his stated opinion. An ALJ "cannot arbitrarily substitute [her] own judgment for competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)). Accord-

ingly, ALJ Hoppenfeld erred in ruling that plaintiff did not suffer from an impairment listed in Appendix 1 of the CFR.

Even if ALJ Hoppenfeld were correct that Barillaro did not suffer from an impairment listed in Appendix 1 of the CFR, her finding that Barillaro could perform sedentary work is similarly unsupported. At this point in the analysis, step five, "the burden ... shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Balsamo*, 142 F.3d at 80 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)). ALJ Hoppenfeld determined, based on the hearing testimony and medical evidence, that Barillaro could perform "sedentary work" as defined by 20 C.F.R. §§ 404.1567, 416.967. Tr. at 205. The CFR defines "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Social Security Administration has clarified that sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing Social Security Ruling 83–10).

In finding that Barillaro could perform sedentary work, ALJ Hoppenfeld relied primarily on the reports from Dr. Klahr, Dr. Zide and Dr. Collet, stating that their reports "fail to support a conclusion that the claimant is unable to perform any sustained work activity." Tr. at 211. ALJ Hoppenfeld also mentioned that the report

of Dr. Polak corroborates this conclusion. *Id.* Plaintiff maintains that all of the medical evidence that actually addresses plaintiff's residual functional capacity, which includes one assessment by Dr. Zide, two from Dr. Riegel, plaintiff's treating physician, and the testimony of Dr. Schecter at the administrative hearing, all indicate that he did not possess the residual functional capacity to perform sedentary work. According to plaintiff, all of the evidence relied upon by the ALJ was either misinterpreted, or simply did not contain evaluations of his residual functional capacity.

■ The Court agrees with plaintiff. According to the "treating physician's rule," the treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa*, 168 F.3d at 78–79. Dr. Riegel's two residual functioning reports each indicate that Barillaro could not perform sedentary work. In the first evaluation, Dr. Riegel concluded that plaintiff had only a limited ability to lift and carry, that he could stand and/or walk for less than two hours a day, and that he could sit for less than six hours a day. Tr. at 451. In his second evaluation, conducted on April 13, 1999, Dr. Riegel determined that due to his chest pain, angina and fatigue, Barillaro could sit, stand and/or walk for a total of less than two hours in an eight-hour work day. Tr. at 467–69. Furthermore, Dr. Riegel concluded that plaintiff should never lift or carry any amount of weight, and that he must avoid all types of environmental conditions such as extreme cold and heat, wetness, humidity, noise, fumes, dust, poor ventilation and others. Tr. at 469–70.

Dr. Zide's report reflects similar concerns. Contrary to ALJ Hoppenfeld's impression that this evidence supported a finding that Barillaro could perform sedentary work, Dr. Zide stated that Barillaro could walk no further than one city block without resting, that he could sit and stand for only fifteen to twenty minutes at a time, and that he could sit, stand and/or walk for a total of only two hours during an eight-hour work day. Tr. at 496–97. Dr. Zide also found that Barillaro must take a five minute walk approximately every hour, that he would need to be able to shift his position at will, and that he would need to take up to three unscheduled breaks each work day. Tr. at 497. Dr. Zide stated that plaintiff's legs would have to be elevated for 10–20% of the work day and that he should "never" lift or carry any amount of weight. Tr. at 498. Finally, Dr. Zide opined that Barillaro must avoid all exposure to extreme cold and heat, high humidity and cigarette smoke, and even moderate exposure to most odors, chemical fumes and dust, and that he would likely be absent from work more than three times a month. Tr. at 499.

Finally, Dr. Schecter, the ALJ's medical expert, testified at the administrative hearing that while there was nothing in the record before him to indicate that Barillaro could not sit for six hours or lift ten pounds occasionally, his coronary artery disease would prevent him from standing and walking for two hours during an eight-hour work day. Tr. at 256.

As plaintiff points out, the medical reports relied upon by ALJ Hoppenfeld to counter this evidence are not substantial or compelling. As previously discussed, Dr. Zide's testimony does not support a finding that Barillaro met the requirements to perform sedentary work. Dr. Collet's reports mention nothing about plaintiff's residual functional capacity. Tr. at 481–83, 500. Dr. Klahr, a rheumatologist who treated plaintiff for back pain and left thigh pain, stated that plaintiff was experiencing "mild local tenderness" in the lumbar spine and "mild low back pain" when flexing the lumbar spine. Dr. Klahr

also noted that his quadriceps appeared to be "somewhat atrophic bilaterally" and that there was "tenderness on palpation of the anterior thigh region." Tr. at 382. ALJ Hoppenfeld cited these relatively mild symptoms as evidence that plaintiff could perform sedentary work. However, Dr. Klahr was not performing a residual functional capacity assessment, and states nothing about Barillaro's capacity to perform certain types of work. As such, it was inappropriate for ALJ Hoppenfeld to use this report to formulate her own opinion about plaintiff's residual functional capacity to counter the treating physician's diagnosis. See *Balsamo*, 142 F.3d at 81 ("[T]he ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion . . . .").

Finally, Dr. Polak, who conducted a physical examination of Barillaro, stated only that plaintiff is "mildly to moderately impaired for carrying/lifting, pushing/pulling, bending, sitting, walking or standing." Tr. at 388. However, this opinion is too vague to provide substantial evidence to counteract the opinion of Dr. Riegel. See *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (doctor's opinion that claimant's "impairment [was]: [l]ifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" was "so vague as to render it useless in evaluating whether [claimant could] perform sedentary work."). The Court therefore finds that ALJ Hoppenfeld did not afford enough weight to the opinion of plaintiff's treating physician, Dr. Riegel, which is well supported by substantial evidence in the record, and corroborated by the medical reports of other consulting physicians,

including the medical expert, Dr. Schecter. Accordingly, the Court concludes that ALJ Hoppenfeld erred in finding that Barillaro could perform sedentary work.[3]

Even if ALJ Hoppenfeld were correct that plaintiff could perform sedentary work, the Court finds that she misapplied the Medical–Vocational Guidelines in determining that he was not disabled. ALJ Hoppenfeld followed Rule 201.19, which applies to individuals aged 45–49, with limited education or less, having skilled or semiskilled previous work experience where the skills are not transferable. This rule leads to a finding of no disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.19. Plaintiff claims she should have applied Rule 201.17, which is for individuals aged 45–49, who are illiterate or unable to communicate in English, who are unskilled or have no skills. This rule leads to a finding of disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.17.

ALJ Hoppenfeld recognized that Barillaro could not read and write English. Tr. at 205, 230. The term "illiterate," as defined in the aforementioned rules, means unable to read or write English. See *Chavez v. Dep't of Health and Human Servs.*, 103 F.3d 849, 852 (9th Cir.1996) (citing 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5), 404.1564(b)(1)). Thus, in order to fall under Rule 201.17, plaintiff must establish that his prior work experience was unskilled. The Ninth Circuit has held that "as a matter of interpretation, in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to

---

**3.** The only other evidence the Commissioner cites in support of her position is the report of Dr. Eshkenazi, which she references, in her reply brief. Dr. Eshkenazi performed a consultative psychiatric evaluation of Barillaro in March 1998, and found that "[f]rom a psychiatric point of view, Mr. Barillaro does not

suffer from any condition that might prevent him from being gainfully employed." Tr. at 381. However, this report does not address plaintiff's physical limitations and is not specifically concerned with plaintiff's residual functional capacity. As such, it is of limited probative value.

an unskilled work history." *Silveira v. Apfel,* 204 F.3d 1257, 1260 (9th Cir.2000). The *Silveira* Court based its holding on 20 C.F.R. §§ 404.1565(a), 416.965(a) and Social Security Ruling 82–41. *Id.* The Court agrees with the Ninth Circuit's position in *Silveira.* Thus, although plaintiff's prior employment was skilled work, ALJ Hoppenfeld found his skills to be untransferable. Therefore, ALJ Hoppenfeld should have applied Rule 201.17, leading to a finding of total disability.

Having determined that ALJ Hoppenfeld erred in evaluating the medical evidence, the only remaining question is whether to remand the case for further development of the record, or to remand directly for calculation of benefits. Where the medical evidence is incomplete, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa,* 168 F.3d at 79. However, if "the reversal is based solely on the [Commissioner's] failure to sustain [her] burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing unless the [Commissioner] could offer additional evidence." *Balsamo,* 142 F.3d at 82 (quoting *Carroll,* 705 F.2d at 644) (internal quotation marks omitted). There would be no purpose in further developing the record in this case,

as the omitted evidence comes mostly from Dr. Riegel, whose opinion is evident in the existing record. The remaining documents either do not address plaintiff's residual functional capacity, or do not contradict the great weight of the evidence.[4] Accordingly, the Court remands this case directly for calculation of benefits.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for judgment on the pleadings and denies defendant's motion for remand. The decision of the administrative law judge is vacated and the case is remanded for calculation of benefits. The Clerk of the Court is directed to close this case.

SO ORDERED.

---

4. The only piece of this missing evidence that could possibly help the Commissioner sustain her burden is the report of Dr. Collet where he evaluates plaintiff for a disability determination. In that report, dated, September 13, 1994, Dr. Collet found that plaintiff had no limitations with respect to lifting, carrying, standing, walking, sitting, pushing or pulling. Tr. at 152. However, Dr. Collet is an ophthalmologist who was treating plaintiff for diabetic retinopathy with macular edema.

Thus, although plaintiff's visual difficulties may not have precluded him from lifting, carrying, etc., that does not mean that he was able to perform sedentary work. Indeed, the vocational expert testified at the administrative hearing that Barillaro's poor eyesight would greatly reduce the number of jobs he could perform. Tr. at 207, 275. Moreover, Dr. Collet's report does little to counteract the great weight of the evidence in the record.